J-A09013-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: C.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: SOMERSET COUNTY | : | |
| CHILDREN AND YOUTH SERVICES | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1900 WDA 2017 |

Appeal from the Order Entered November 28, 2017
In the Court of Common Pleas of Somerset County Orphans' Court at
No(s):   16 Adoption 2017

BEFORE:   BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                        FILED NOVEMBER 15, 2018

Somerset County Children and Youth Services ("CYS") appeals from the orphans' court order denying its petition to terminate the parental rights of K.M. ("Mother") to her then-five-year-old son, C.M.[1]  We vacate and remand for further proceedings.

The orphans' court summarized the facts and procedural history as follows:

> This case was referred to the CYS agency approximately two years ago when an initial referral was received on or about October 21, 2015, related to alleged drug usage and [M]other's boyfriend at the time having overdosed on heroin.  At that time, natural father was incarcerated.  [Mother was arrested, charged with various drug and child endangerment offenses, and following her conviction, she was sentenced to probation].

_____

[1] On the same date, the orphans' court granted CYS's petition to terminate the parental rights of the birth father, A.J., who did not appeal that decision.

Based on the [ensuing] investigation . . . , the agency created a Safety Plan for [C.M.], which provided that [Mother] would not have any unsupervised contact with [C.M.] The supervised visitation or custody between [Mother] and [C.M.] was to be supervised by the maternal grandparents.

On or about November 4, 2015, the agency conducted a home visit and discovered that [Mother] was having unsupervised contact and custody with [C.M.] The police were summoned; and it was discovered that [Mother] not only was having unsupervised custody of [C.M.], but was in possession of a controlled substance and drug paraphernalia while in the presence of the child. As a result, [C.M.] was removed from the custody of [Mother] and maternal grandparents and emergency custody was granted to the agency[, who] . . . placed [C.M.] into foster care with [foster parents, where he currently resides].

N.T., 11/28/17, at 120-121.

The juvenile court adjudicated C.M. dependent on December 16, 2015, and ordered Mother to, inter alia, attend supervised visitations at Somerset County Children's Aid Home, complete a mental health evaluation, participate in mental health counseling, and undergo inpatient substance abuse rehabilitation. Mother complied with some of these conditions. For instance, she regularly attended supervised visitations with C.M., provided him gifts, letters, and cards, and maintained regular telephone contact with him. Likewise, although Mother failed to complete a mental health evaluation, she engaged in mental health counseling.

Nevertheless, Mother's struggle with substance abuse persisted. On February 29, 2016, Mother completed an inpatient program at Turning Point Chemical Dependency Facility, but five months later she relapsed and was discharged from intensive outpatient treatment. During December 2016, she

tested positive for barbiturates and entered a different inpatient rehabilitation treatment program, which she successfully completed. Unfortunately, Mother was discharged from the ensuing outpatient program due to nonattendance. On May 10, 2017, only one month before CYS filed its petition to terminate her parental rights, Mother tested positive for cocaine, heroin, and marijuana. As of the date of the evidentiary hearing, Mother was treating with methadone, and she had recently pled guilty to a felony drug offense stemming from a November 2015 incident that occurred in Cambria County, Pennsylvania. Sentencing for that matter was scheduled for January 2018.

On June 12, 2017, CYS filed a petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). As we discuss, infra, the orphans' court did not appoint separate legal counsel for C.M. pursuant to § 2313(a). Instead, C.M. continued to be represented by Kimberly Hindman, Esquire, the guardian ad litem who was appointed during the dependency proceedings.

During the evidentiary hearing, CYS presented the expert testimony of Carol A. Patterson, M.ED., the licensed psychologist who performed the bonding evaluations in this case. Ms. Patterson conducted interviews with Mother and the foster parents, whom she considered an adoptive resource. She also observed C.M. in two-hour interactions with Mother and the foster parents, respectively. Ms. Patterson noted that the five year old has a limited bond with Mother, whom he calls "mommy," but stressed that his primary bond and attachment is with the foster parents, whom he refers to as "papa"

and "mama," and whose children C.M. considers to be his brother and sister N.T., 11/28/17, at 19, 23, 26, 27.

Following the close of evidence, the trial court denied CYS's petition to terminate Mother's parental rights. Since the orphans' court determined that the grounds for terminating parental rights did not exist under § 2511(a), it did not conduct the needs-and-welfare analysis pursuant to § 2511(b). This timely appeal followed.

CYS presents the following questions for our review:

I. Whether appellant proved by clear and convincing evidence at least one statutory ground for the termination of mother's parental rights[.]

II. Whether the trial court erred and/or committed an abuse of discretion by considering efforts made by mother to remedy the conditions which were initiated after the filing of the petition to terminate her parental rights[.]

III. Whether the trial court erred and/or committed an abuse of discretion by failing to find that terminatioin [sic] of mother's parental rights would best serve the needs and welfare of the child[.]

CYS's brief at 4.

Initially, we confront whether the orphans' court provided C.M. counsel as required by § 2313(a), an issue this Court will address sua sponte because the right to counsel rests with the child, who is unable to assert it autonomously. See In re T.M.L.M., 184 A.3d 585, 587-91 (Pa.Super. 2018) (holding that child's statutory right to counsel is non-waivable); In re K.J.H., 180 A.3d 411 (Pa. Super. 2018) (holding that this Court must determine sua

sponte whether 23 Pa.C.S. § 2313(a) was satisfied). Pursuant § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for child's legal interests, which our Supreme Court has defined as a child's preferred outcome. In re T.S., 192 A.3d 1080, 1082 (Pa. 2018) (citing In Re Adoption of L.B.M., 161 A.3d 172 (Pa. 2017). The T.S. Court confirmed that a guardian ad litem who is an attorney may act as legal counsel pursuant to § 2313(a) as long as the dual roles do not create a conflict between the child's legal and best interests. Id. at 1090-93.

Hence, the appointment of counsel is mandatory in this type of contested case, and except where no conflict exists between the child's best interest and his or her legal interest, a separate counsel must be appointed to advocate the child's legal interest. See T.S., supra. The obligation to avoid the representation of conflicting interests is upon the attorney appointed pursuant to § 2313(a). Instantly, insofar as the certified record reveals that at least a superficial bond exists between C.M. and Mother, whom he calls "mommy," and that C.M. once entreated that Mother wait to "plant flowers until [he] come[s] home," n.t., 11/28/17, at 19, the record evidences the potential for a conflict of interest that would preclude a single attorney from representing both aspects of C.M.'s case without first determining his preference.

This Court confronted a similar issue in In re T.M.L.M., supra, wherein we vacated the order terminating parental rights and remanded the matter for the appointment of separate legal counsel to determine the preferred outcome of six-year-old T.M.L.M., whose preference was not readily discernible from the certified record. T.M.L.M. periodically asked about his Mother and requested to call her. Id. at 589 n.4. He cried during some visitations and declared that he wanted to live with Mother. Id. However, at other times, the child stated a desire to remain with his foster parent and visit his Mother occasionally because he "underst[ood] he [could] not live with [her]." Id.

In vacating the order terminating Mother's parental rights, we reasoned,

> At the time of the hearings, Child was just shy of six years old. While Child may not have been old enough to participate actively in [counsel's] representation of him, it is not unlikely that Child has feelings one way or another about his mother and his permanency. Like adult clients, effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position. It may be that Child's preferred outcome in this case is synonymous with his best interests. It may be that Child wants no contact with Mother. Child may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if Child prefers a different outcome. However, pursuant to the Supreme Court's opinion in . . . L.B.M., it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests. L.B.M., 161 A.3d at 174, 180.

In re T.M.L.M., supra at 590.

Instantly, notwithstanding the presence of a limited bond between C.M. and Mother, and the child's statement that he at least contemplated a return "home," Attorney Hindman expressly declined to inquire about C.M.'s preference, and she unilaterally pursued what she deemed to be his best interests. During summations, Attorney Hindman informed the orphans' court that she declined to speak with then-five-year-old C.M. to determine his preferred outcome of the case because she did not want him to feel guilty about being the reason that the court terminated Mother's parental rights. She explained, "I have not spoken with [C.M.] because of his young age. I don't like to ask children, [']what would you like to see happen[?'], and then have them feel responsible for whatever the decision is." N.T., 11/28/17, at 112-13. She continued, "I think [children] internalize so much what happens as being their fault. So I don't ask them: What do they want? I guess that's why I'm here as the Guardian ad litem, to speak for [C.M.], what I think is in his best interests." Id. at 113.

While Attorney Hindman's desire to alleviate C.M.'s sense of guilt is praiseworthy, by foregoing any inquiry concerning C.M.'s preferred outcome of the contested termination of parental rights proceedings, her representation falls short of the statutory mandate provided in § 2313(a). Stated plainly, she neglected to eliminate the potential for a conflict between C.M.'s legal interest and what she deemed to be in his best interests.

Thus, consistent with the prevailing case law, we vacate the order denying CYS's petition to terminate Mother's parental rights and remand for the orphans' court to determine C.M.'s legal interest, and if C.M.'s legal interest conflicts with the result of the prior termination proceeding, conduct a new hearing giving C.M.'s counsel the opportunity to advocate that interest on his client's behalf. See In re T.M.L.M., supra at 591. If C.M.'s legal interest coincides with the result of the prior hearing, the orphans' court may reenter its original order Id.

Order vacated without prejudice to permit the orphans' court to reenter the original order if a new hearing is not held. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Dubow joins and files a concurring statement.

Judge Murray joins the memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2018